## UNITED STATES DISTRICT COURT
## DISTRICT OF CONNECTICUT

| | |
|---|---|
| SCOTT A. APPLEBAUM, Derivatively on Behalf of Nominal Defendant STANLEY BLACK & DECKER, INC., <br><br> Plaintiff, <br><br> v. <br><br> DONALD ALLAN, JR., JAMES M. LOREE, ANDREA J. AYERS, PATRICK D. CAMPBELL, DEBRA A. CREW, MICHAEL D. HANKIN, IRVING TAN, GEORGE W. BUCKLEY, CARLOS M. CARDOSO, ROBERT B. COUTTS, ADRIAN V. MITCHELL, JANE M. PALMIERI, MOJDEH POUL, ROBERT J. MANNING, and DMITRI STOCKTON <br><br> Defendants, <br><br> and <br><br> STANLEY BLACK & DECKER INC., <br><br> Nominal Defendant. | Case No. |

## <u>VERIFIED SHAREHOLDER DERIVATIVE COMPLAINT</u>

Plaintiff Scott A. Applebaum ("Plaintiff"), by and through his undersigned attorneys,

brings this derivative complaint for the benefit of nominal defendant Stanley Black & Decker

Inc. (herein referred to as "Stanley" or the "Company"), against its Board of Directors (the

"Board") and certain of its executive officers seeking to remedy the Individual Defendants'[1]

---

[1] The "Individual Defendants" are Donald Allan, Jr., James M. Loree, Andrea J. Ayers, Patrick D. Campbell, Debra A. Crew, Michael D. Hankin, Irving Tan, George w. Buckley, Carlos M. Cardoso, Robert B. Coutts, Adrian V. Mitchell, Jane M. Palmieri, Mojdeh Poul, Robert J. Manning, and Dmitri Stockton.

breaches of fiduciary duties and violations of federal law.  Plaintiff alleges the following based upon personal knowledge as to himself and his own acts, and information and belief as to all other matters, based upon, *inter alia*, the investigation conducted by and through Plaintiff's attorneys, which included, among other things, a review of the Company's publicly available documents, including the allegations of the class action complaint filed in a securities class action, captioned *Rammohan v. Stanley Black & Decker, Inc. et al,* Case No. 3:23-cv-00369 (D. Conn. Mar. 24, 2023) (the "Securities Class Action"), conference call transcripts and announcements, filings with the United States Securities and Exchange Commission (the "SEC"), press releases published by and regarding Stanley, legal filings, news reports, securities analysts' reports about the Company, and other publicly available information.

<u>**NATURE OF THE ACTION**</u>

1.      This is a shareholder derivative action brought on behalf of Stanley against certain officers and members of the Company's Board for breaches of their fiduciary duties between at least October 28, 2021, and July 28, 2022 inclusive (the "Relevant Period") and violation of the federal securities laws caused by the issuance of materially false and misleading statements that have exposed the Company to massive class-wide liability, as well as the expenditure of substantial defense costs in connection with the Securities Class Action, as set forth below.

2.      Stanley is a global manufacturer of tools and outdoor products incorporated in Connecticut.

3.      In 2020 and early 2021, as millions were working from home due to the COVID-19 pandemic, an increase in home remodeling and do-it-yourself ("DIY") projects spurred explosive growth in the demand for Stanley's products.

4.      By 2022, however, as a result of the decline in remote work, rising interest rates

and inflation, and price increases across Stanley's business, demand for Stanley's products began to stagnate.

5.      Despite this, Stanley management issued false and misleading statements, touting the robust demand for the Company's products and attributing the downturn to industry-wide supply chain issues. Further, management claimed that they were closely monitoring the changing economic environment and could prepare for any upcoming downturns in the demand for Stanley's products. For example, during a February 1, 2022 earnings call, then-CEO James Loree stated that "we will carefully watch for any impacts from a higher interest rate environment or changes in the elasticity of demand following price increases and react accordingly if things change" and that the Individual Defendants were "confident in [their] ability to execute in today's dynamic, volatile environment."

6.      Throughout the Relevant Period, the Individual Defendants issued statements that were materially false and misleading and omitted to state material adverse facts necessary to make the statements not misleading because they failed to disclose that: (i) rising interest rates and inflation were eroding the Company's then-heightened demand for its tools and outdoor products; (ii) the Company's explosive demand growth in 2020 and 2021 was a temporary effect of the COVID-19 pandemic, and demand for the Company's products was returning to pre-pandemic levels as people returned to in-person work; (iii) as a result of reorganization, share repurchasing, and dividend growth, Stanley lacked the liquidity to react quickly to changes in demand; and (iv) as a result of Stanley's inability to react to declining demand, the Company experienced a severe contraction in sales volume.

7.      While the Individual Defendants continued to mislead the public about Stanley's deteriorating business and prospects, the truth gradually emerged through a series of partially

corrective disclosures beginning in April 2022.

8.     On July 28, 2022, the truth fully emerged as the Individual Defendants reported significant declines in sales volume and earnings and admitted that the downturn was caused by "the softening of the demand environment."

9.     On this news, the price of Stanley's stock fell from $117.45 per share on July 27, 2022 to a close of $98.58 per share on July 28, 2022, a one-day decline of more than 16%.

10.     As a result of the foregoing, the Securities Class Action alleging violations of the federal securities law was filed against the Company, Donald Allan Jr. and James M. Loree, who are named as defendants in this Action, and Lee McChesney, who is not a party to this action, exposing the Company to massive class-wide liability.

## JURISDICTION AND VENUE

11.     This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1331 and Section 27 of the Securities Exchange Act of 1934 (the "Exchange Act") over the claims asserted herein for violations of Section 10(b) of the Exchange Act (15 U.S.C. §§ 78j(b)) and Rule 10b-5 (17 C.F.R.§240.10b-5) promulgated thereunder by the SEC.

12.     This Court has supplemental jurisdiction over Plaintiff's state law claims pursuant to 28 U.S.C. § 1367(a).

13.     This action is not a collusive action designed to confer jurisdiction on a court of the United States that it would not otherwise have.

14.     In connection with the acts, conduct and other wrongs complained of herein, Defendants, directly or indirectly, used the means and instrumentalities of interstate commerce, the United States mail, and the facilities of a national securities market.

15.     Venue is proper in this District pursuant to Section 27(a) of the Securities Exchange

Act and 28 U.S.C. §1391(b)(1), as Stanley is headquartered in this Judicial District and a substantial portion of the acts and omissions alleged herein, including the dissemination of materially false and misleading information, occurred in this Judicial District.

## PARTIES

*Plaintiff*

16.    Plaintiff Scott A. Applebaum is and has been a continuous shareholder of Stanley since March 2021.

*Nominal Defendant*

17.    Nominal Defendant Stanley is incorporated under the laws of the State of Connecticut.

18.    The Company's principal executive offices are located at 1000 Stanley Drive, New Britain, Connecticut 06053. Stanley's common stock trades on the New York Stock Exchange ("NYSE") under the ticker symbol "SWK."

*Individual Defendants*

19.    Defendant Donald Allan, Jr. ("Allan") has served as Chief Executive Officer ("CEO") of the Company and as a member of the Board since July 2022, and he has served as President of the Company since April 2021. Defendant Allan additionally served as Stanley's Chief Financial Officer ("CFO") from 2009 until 2022. Defendant Allan serves as a member of the Executive Committee. According to the Company's public filings, Defendant Allan received $8,093,256 in 2022 in compensation from the Company.

20.    Defendant James M. Loree ("Loree") served as President and CEO of the Company from 2016 until his departure from the Company in June 2022. Prior to serving as CEO, Defendant Loree served in various other executive positions at the Company beginning in 1999, including

CFO and Chief Operating Officer ("COO"). According to the Company's public filings, Defendant Loree received $13,625,418 in 2022 in compensation from the Company.

21.     Defendant Andrea J. Ayers ("Ayers") has served as a member of the Board since 2022 and as Chair of the Board since 2022. Defendant Ayers serves as a member of the Compensation and Talent Development Committee and the Finance and Pension Committee and as Chair of the Executive Committee. According to the Company's public filings, Defendant Ayers received $449,911 in 2022 in compensation from the Company.

22.     Defendant Patrick D. Campbell ("Campbell") has served as a member of the Board since 2008 and serves as a member of the Executive Committee and the Compensation and Talent Development Committee and as Chair of the Audit Committee. According to the Company's public filings, Defendant Campbell received $320,381 in 2022 in compensation from the Company.

23.     Defendant Debra A. Crew ("Crew") has served as a member of the Board since 2013 and serves as a member of the Executive Committee and the Finance and Pension Committee and as Chair of the Compensation and Talent Development Committee. According to the Company's public filings, Defendant Crew received $333,781 in 2022 in compensation from the Company.

24.     Defendant Michael D. Hankin ("Hankin") has served as a member of the Board since 2016 and serves as a member of the Executive Committee and the Audit Committee and as Chair of the Finance and Pension Committee. According to the Company's public filings, Defendant Hankin received $317,473 in 2022 in compensation from the Company.

25.     Defendant Irving Tan ("Tan") has served as a member of the Board since 2020 and serves as a member of the Executive Committee and the Audit Committee and as Chair of the

Corporate Governance Committee. According to the Company's public filings, Defendant Tan received $299,206 in 2022 in compensation from the Company.

26.     Defendant Adrian V. Mitchell ("Mitchell") has served as a member of the Board since February 2022 and serves as a member of the Audit Committee and the Corporate Governance Committee. According to the Company's public filings, Defendant Mitchell received $271,220 in 2022 in compensation from the Company.

27.     Defendant Jane M. Palmieri ("Palmieri") has served as a member of the Board since 2021 and serves as a member of the Corporate Governance Committee and the Finance and Pension Committee. According to the Company's public filings, Defendant Palmieri received $297,684 in 2022 in compensation from the Company.

28.     Defendant Mojdeh Poul ("Poul") has served as a member of the Board since 2021 and serves as a member of the Audit Committee and the Corporate Governance Committee. According to the Company's public filings, Defendant Poul received $294,599 in 2022 in compensation from the Company.

29.     Defendant Robert J. Manning ("Manning") has served as a member of the Board since August 2022 and serves as a member of the Corporate Governance Committee and the Compensation and Talent Development Committee.

30.     Defendant Carlos M. Cardoso ("Cardoso") served as a member of the Board from 2007 until April 2023. According to the Company's public filings, Defendant Cardoso received $335,810 in 2022 in compensation from the Company.

31.     Defendant Robert B. Coutts ("Coutts") served as a member of the Board from 2007 until April 2023. According to the Company's public filings, Defendant Coutts received $323,080 in 2022 in compensation from the Company.

32.     Defendant George W. Buckley ("Buckley") served as a member of the Board from 2010 until April 2022. According to the Company's public filings, Defendant Buckley received $487,861 in 2021 in compensation from the Company.

33.     Defendant Dmitri Stockton ("Stockton") served as a member of the Board from 2018 until December 31, 2021. According to the Company's public filings, Defendant Stockton received $305,000 in 2021 in compensation from the Company.

## FIDUCIARY DUTIES OF THE INDIVIDUAL DEFENDANTS

34.     By reason of their positions as officers and/or directors of Stanley, and because of their ability to control the business and corporate affairs of Stanley, the Individual Defendants owed Stanley and its shareholders fiduciary obligations of trust, loyalty, good faith, and due care, and were and are required to use their utmost ability to control and manage Stanley in a fair, just, honest, and equitable manner. The Individual Defendants were and are required to act in furtherance of the best interests of Stanley and its shareholders.

35.     Each director and officer of the Company owes to Stanley and its shareholders the fiduciary duty to exercise good faith and diligence in the administration of the Company and in the use and preservation of its property and assets and the highest obligation of fair dealing.

36.     The Individual Defendants, because of their positions of control and authority as directors and/or officers of Stanley, were able to and did, directly and/or indirectly, exercise control over the wrongful acts complained of herein.

37.     To discharge their duties, the officers and directors of Stanley were required to exercise reasonable and prudent supervision over the management, policies, controls, and operations of the Company.

38.     Each Individual Defendant, by virtue of his or her position as a director and/or

officer owed to the Company and to its shareholders the highest fiduciary duties of loyalty, good faith, and the exercise of due care and diligence in the management and administration of the affairs of the Company, as well as in the use and preservation of its property and assets. The conduct of the Individual Defendants complained of herein involves a knowing and culpable violation of their obligations as directors and/or officers of Stanley, the absence of good faith on their part, or a reckless disregard for their duties to the Company and its shareholders that the Individual Defendants were aware or should have been aware posed a risk of serious injury to the Company.

39.     As senior executive officers and directors of a publicly-traded company whose common stock was registered with the SEC pursuant to the Exchange Act and traded on the NYSE, the Individual Defendants had a duty to prevent and not to effect the dissemination of inaccurate and untruthful information with respect to the Company's financial condition, performance, growth, financial statements, products, management, internal controls, earnings, and present and future business prospects, including the dissemination of false and/or materially misleading information regarding the Company's business, prospects, and operations, and had a duty to cause the Company to disclose in its regulatory filings with the SEC all those facts described in this Complaint that it failed to disclose, so that the market price of the Company's common stock would be based upon truthful, accurate, and fairly presented information.

40.     To discharge their duties, the officers and directors of Stanley were required to exercise reasonable and prudent supervision over the management, policies, practices, and internal controls of the Company. By virtue of such duties, the officers and directors of Stanley were required to, among other things:

        (a)     Ensure that the Company was operated in a diligent, honest, and prudent

manner in accordance with the laws and regulations of Connecticut and the United States, and pursuant to Stanley's own Code of Conduct;

(b)     Conduct the affairs of the Company in an efficient, business-like manner so as to make it possible to provide the highest quality performance of its business, to avoid wasting the Company's assets, and to maximize the value of the Company's stock;

(c)     Remain informed as to how Stanley conducted its operations, and, upon receipt of notice or information of imprudent or unsound conditions or practices, to make reasonable inquiry in connection therewith, and to take steps to correct such conditions or practices;

(d)     Establish and maintain systematic and accurate records and reports of the business and internal affairs of Stanley and procedures for the reporting of the business and internal affairs to the Board and to periodically investigate, or cause independent investigation to be made of, said reports and records;

(e)     Maintain and implement an adequate and functioning system of internal legal, financial, and management controls, such that Stanley's operations would comply with all applicable laws and Stanley's financial statements and regulatory filings filed with the SEC and disseminated to the public and the Company's shareholders would be accurate;

(f)     Exercise reasonable control and supervision over the public statements made by the Company's officers and employees and any other reports or information that the Company was required by law to disseminate; and

(g)     Examine and evaluate any reports of examinations, audits, or other financial information concerning the financial affairs of the Company and to make full and accurate disclosure of all material facts concerning, *inter alia*, each of the subjects and duties set forth

above.

41.     The Individual Defendants, because of their positions of control and authority, were able to and did, directly or indirectly, exercise control over the wrongful acts complained of herein, as well as the contents of the various public statements issued by Stanley.

42.     At all times relevant hereto, the Individual Defendants were the agents of each other and of Stanley and were at all times acting within the course and scope of such agency.

43.     Each of the Individual Defendants breached his or her fiduciary duties as alleged herein, both individually and in concert with the other Defendants.

## STANLEY'S CODE OF BUSINESS ETHICS

44.     Stanley's Code of Business Ethics (the "Code of Conduct") begins with a message from Defendant Allan stating, in relevant part: "As a company that is for those who make the world, our colleagues, customers, suppliers and other stakeholders expect us to maintain high standards of integrity and ethical behavior." (Code of Conduct, at 2).

45.     The Code of Conduct expressly applies to all of the Company's "employees, officers, directors, contractors, vendors, and suppliers," and "any violations of the Code, or the law, will result in disciplinary action, up to and including termination." *Id.,* at 5.

46.     In a section titled "We compete fairly," the Code of Conduct states, in relevant part: "We provide only honest and truthful information to our business partners and suppliers, never knowingly providing inaccurate information to gain an advantage." *Id.,* at 14.

47.     In a section titled "We maintain accurate financial records," the Code of Conduct States, in relevant part:

> Our shareholders and customers rely on us to maintain accurate and timely financial records and we depend on those records to manage our business. Each of us bears the responsibility to accurately report all financial information such as expense reports, financial statements, invoices, forecasts, time records and more.

11

*Id.,* at 27.

## STANLEY'S AUDIT COMMITTEE CHARTER

48.     Pursuant to Stanley's Audit Committee Charter, the primary function of the Audit

Committee is to:

> [A]ssist the Board in monitoring (1) the integrity of the financial statements,
> accounting and financial reporting processes and systems of internal accounting
> and financial controls of the Company, (2) the independent auditor's qualifications
> and independence, (3) the performance of the Company's internal audit function
> and independent auditors, (4) the evaluation of the Company's risk and policies for
> risk management and assessment and (5) the compliance by the Company with
> legal and regulatory requirements.

49.     Stanley's Audit Committee Charter additionally states that the Audit Committee

shall:

> 1. Review and discuss with management and the independent auditor the annual
> audited financial statements prior to the filing of the Form 10-K, including specific
> disclosures made in management's discussion and analysis and the results of the
> annual audit and recommend to the Board whether the audited financial statements
> should be included in the Company's Form 10-K.
>
> 2. Review and discuss with management and the independent auditor the
> Company's quarterly financial statements prior to the filing of its Form 10-Q,
> including specific disclosures made in management's discussion and analysis and
> the results of the independent auditor's review of the quarterly financial statements.
>
> 3. Discuss with management and the independent auditor significant financial
> reporting issues and judgments made in connection with the preparation of the
> Company's financial statements, including any significant changes in the
> Company's selection or application of accounting principles, any critical audit
> matters to be included in the independent auditor's audit letter, any major issues as
> to the adequacy of the Company's internal controls and disclosure controls and any
> special steps adopted in light of significant control deficiencies or material
> weaknesses, and any changes in the Company's internal control over financial
> reporting during the most recent fiscal quarter that have materially affected, or are
> reasonably likely to materially affect, internal control over financial reporting.

*Id.,* at 2-3.

50.     The Audit Committee Charter further provides that the Audit Committee shall:

Obtain periodic reports from the Company's General Counsel with respect to compliance by the Company and its affiliates with applicable legal requirements and the Company's Code of Business Ethics. Review with management and advise the Board, not less frequently than annually, with respect to the implementation and effectiveness of the Company's compliance and ethics programs, including the Company's policies and procedures regarding compliance with applicable laws and regulations and with the Company's Code of Business Ethics.

*Id.*, at 5.

## SUBSTANTIVE ALLEGATIONS

### *Background*

51.    Stanley Black & Decker is a Connecticut corporation that operates globally, manufacturing and selling tools and outdoor products to commercial customers and engineered fastening systems to industrial customers.

52.    In recent years, the Company has implemented a campaign to shift its focus toward its two primary business segments: Tools & Outdoor, and Industrial.

53.    The Company's Tools & Outdoor segment is comprised of several business units, including its Power Tools Group unit (PTG), its Hand Tools/Accessories & Storage unit (HTAS), and its Outdoor Power Equipment unit, which sells lawn and garden products.

54.    The Tools & Outdoor segment serves a variety of customers including retail customers, professional end users, distributors, and industrial customers across a wide range of industries and geographies. A majority of the Company's sales in its Tools & Outdoor segment, which accounted for 82% and 85% of Stanley's total revenues in 2021 and 2022, respectively, are distributed through retailers, including home centers, mass merchants, hardware stores, and retail lumber yards.

55.    Sales in the United States account for 63% of the Company's revenue. Given Stanley's dependence on the United States market, the Company closely monitors demand in the United States, tracking sales volume and gathering point of sale ("POS") data for its products sold

13

there.

56.     In the last two years, the Company has increasingly prioritized its Tools & Outdoor segment through divestments and key acquisitions. In November and December 2021, the Company acquired MTD Holdings (an outdoor equipment manufacturer) and Excel Industries (a turf-care equipment company) and incorporated them into its Tools & Outdoor business segment.

57.     In July 2022, the Company sold its Convergent Security Solutions business, which provides commercial electronic security and healthcare solutions, and its Mechanical Access Solutions business, which sells mechanical doors. That same month, Stanley further announced an agreement to sell its Stanley Oil & Gas business. These divestments signified that Stanley Black & Decker, a once highly diversified company, was increasingly focusing on its core Tools & Outdoor business.

58.     In 2020 and early 2021, as a result of the COVID-19 pandemic and an accompanying increase in home remodeling and DIY projects, the Company experienced explosive growth in the demand for its products.

59.     By 2022 however, as a result of several factors, including rising interest rates and inflation, price increases across Stanley's business, and the return to work away from home for millions of Americans, demand for the Company's products began to stagnate.

### The Individual Defendants' False and Misleading Statements

60.     The Relevant Period begins on October 28, 2021, when Stanley announced its third quarter 2021 financial results. The Individual Defendants reported extraordinarily high consumer demand resulting from the COVID-19 pandemic. The Individual Defendants represented the heightened demand as sustainable in spite of rising inflation and interest rates and price increases across Stanley's business.

61.     In a press release issued by the Company that day, Defendant Loree stated that "[w]e are pleased to deliver 10% organic growth and record third quarter revenues as ***customer demand remains robust*** across the majority of our end markets," noting that Stanley's "multi-year growth story remains compelling given the positive ***secular demand trends and unique opportunities ahead***."[2] During this time, the demand for Stanley's products had begun to decline. Despite this, Defendant Loree falsely attributed the Company's stagnating growth to a "universally difficult supply chain environment" and "inflationary trends." The press release further assured shareholders and the public that "***[d]emand was robust across all markets*** as the secular shifts related to the reconnection with the home and garden and eCommerce were amplified by our industry-leading innovation and ***strong professional demand."*** The press release indicated that "North America reflected retail growth as well as ***consistently strong commercial and industrial channels***."

62.     Also on October 28, 2021, during an earnings call, Defendant Loree maintained that "consumer demand remained at robust levels" and continued to attribute the Company's stagnating growth to the "unusually complex supply chain environment." Defendant Loree reiterated that the Company's heightened demand during the early COVID-19 pandemic would persist, stating "***we remain highly confident in our multiyear growth***" and that "several positive secular demand trends . . . are benefiting our businesses, and ***we remain bullish on the resi[dential] and nonresi[dential] construction markets*** as well as the industrial recovery." Defendant Loree expressly stated during the earnings call that Stanley was "enjoying positive secular trends, ***vibrant markets and a strong array of growth catalysts, and we expect this to continue."***

63.     During the same earnings call, Defendant Allan, Stanley's then-CFO, stated that

---

[2] Unless indicated otherwise, all emphasis is added.

"[o]ur thesis on demand is playing out as underlying construction activity remains strong and the Pro is driving growth[.]" Defendant Allan further confirmed that the Individual Defendants monitored POS data to measure demand and were expecting continued demand growth:

> Further **demonstrating the durability of these trends**, our latest POS results showed mid- single-digit growth over the last 4 weeks, covering late September through mid-October, with the last measured week up double digits, **a very good signal of the healthy backdrop in U.S. retail**.

64. Defendant Allan explicitly assured investors that demand for Stanley's products would remain strong despite the supply chain environment and rising inflation:

> [T]he **market demand environment remains very strong and supportive**. We have a phenomenal set of growth catalysts across the businesses, and **we are actively addressing the supply and inflation environment**, **which has not worsened** from what we have experienced in Q3. **We remain well positioned to deliver above-market organic growth** with operating leverage, resulting in strong free cash flow generation that will drive top quartile shareholder returns over the long term.

65. Defendant Loree repeated this claim during the earnings call, continuing to attribute the Company's stagnating growth to industry-wide supply chain issues: "we continue to execute on the strong demand trends and deliver **exceptional organic growth despite the temporarily challenging supply chain environment**."

66. During the earnings call, in response to a question regarding the Company's sales volume growth, Defendant Loree explained:

> The **demand is strong**. **The conditions are supportive**" and "[s]o **serving the demand, I think, is the challenge**. ... **[W]e're confident we've created the demand and the environment is supportive**, and we need to serve the demand. That is challenging. But you can see we delivered on our third quarter organic growth commitment, 10% despite the challenges that we faced. And so we have a resilient organization and we have all the growth programs in place, and **we have a high level of confidence that we can deliver that sort of growth**.

67. On February 1, 2022, Stanley issued a press release and held and earnings call announcing the Company's fourth quarter and full year 2022 financial results. During the February

1, 2022 earnings call, Defendant Loree maintained that demand for Stanley's products would remain strong, and if demand did stagnate, the Individual Defendants would react accordingly. During the earnings call, Defendant Loree stated that "[w]e benefited from extraordinarily strong customer demand, which continues for our innovative products and portfolio of brands," and that there were "several positive secular demand trends that are benefiting our business."

68.     Also during the February 1, 2022 earnings call, Defendant Loree repeated the claim that the Individual Defendants were closely monitoring demand for the Company's products as interest rates rose and as the Company raised its prices: "we will carefully watch for any impacts from a higher interest rate environment or changes in the elasticity of demand following price increases and react accordingly if things change" and that the Individual Defendants were "confident in [their] ability to execute in today's dynamic, volatile environment."

69.     In response to a question regarding the Company's strategy to mitigate changes in demand, Defendant Loree stated that "we just need to continue to monitor price elasticity, competitive dynamics, all those different things that on does when one manages an environment like this." With regard to the specific effect of product price increases on demand, Defendant Allan stated that the Individual Defendants were "watch[ing] this very closely, and it's why we're taking this approach on the volume side where we're not being overly aggressive in forecasting where the volume might go."

70.     The Individual Defendants' statements above were materially false and misleading and omitted to state material adverse facts necessary to make the statements not misleading because they failed to disclose that: (i) rising interest rates and inflation were eroding the Company's then-heightened demand for its tools and outdoor products; (ii) the Company's explosive demand growth in 2020 and 2021 was a temporary effect of the COVID-19 pandemic,

and demand for the Company's products was returning to pre-pandemic levels as people returned to in-person work; (iii) as a result of reorganization, share repurchasing, and dividend growth, Stanley lacked the liquidity to react quickly to changes in demand; and (iv) as a result of Stanley's inability to react to declining demand, the Company experienced a severe contraction in sales volume.

***The Truth Gradually Emerges***

71.     On the morning of April 28, 2022, the Company issued a press release reporting that "[n]et sales for the quarter were . . . partially offset by lower volume (-6%)[.]" The same day, Stanley filed a quarterly report on Form 10-Q with the SEC announcing the Company's first quarter 2022 financial results. That filing disclosed that the Company's net sales during the first quarter were "partially offset by a 6% . . . decrease from volume," an indication of demand contraction.

72.     During an earnings call on the same day, Defendant Allan confirmed that the Individual Defendants were "updating . . . adjusted earnings per share to a range of $9.50 up to $10.50," representing a decline of nearly 16 to 21% from the adjusted earnings per share of $12 to $12.50 that Stanley had announced for its fiscal year 2022.

73.     On this news, the price of Stanley stock fell from $139.14 per share on April 27, 2022 to $127.13 on April 28, 2022, a one-day decline of 8.6%.

74.     Despite this, the Individual Defendants continued to misrepresent the nature and extent of the Company's declining demand and sales. For instance, the April 28, 2022 press release characterized the decrease in sales volume as "in line with expectations" and attributed it to "temporary electronic component supply challenges, which have continued to improve."

75.     Further, in the press release, Defendant Loree stated that "[w]hile inflationary

pressures remain a macro headwind" on demand, "we have demonstrated our ability to offset those pressures." Despite the reduction in volume, the press release touted the Company's "robust" demand:

> Using 2019 as a baseline, ***U.S. retail point-of-sale demand remained robust*** driven by strong professional construction markets and innovation with POS growth rates stronger than the growth rates experienced in 2H'21. ***Channel inventory in U.S. retail remained below historical levels***, in particular for professional power tools.

76.     During the April 28, 2022 earnings call, Defendant Allan stated that ***"[t]he headline for the first quarter is that demand for our products remains healthy***" and that "we have not seen evidence of broad demand destruction related to price elasticity." With respect to Stanley's Tools & Outdoor segment, Allan stated:

> U.S. retail point-of-sale remains at healthy levels, supported by strong professional construction markets and our innovation. While the POS comps were down versus a stimulus-aided Q1 2021, the normalized 2019 comparative growth rates accelerated from the levels we experienced in the back half of 2021. This strengthens our conviction that ***we continue to experience a very solid demand environment***.

77.     Also during the earnings call, in response to a question regarding the Company's revised sales volumes for the fiscal year 2022 from single-digit growth to "kind of flat," Defendant Allan maintained that "***[i]t's not necessarily a view that we think demand is slowing***. ... ***[I]t is not an assumption that there's some significant slowdown related to overall demand.***"

78.     Defendant Loree also continued to mischaracterize the Company's declining demand and prospects during the April 28, 2022 earnings call, stating that while "[o]rganic revenue was down 1% ... ***customer demand remained strong*** across many of our global markets and price realization accelerated sequentially from the fourth quarter." While Defendant Loree acknowledged that "[t]he volume could have been higher," he again attributed the downturn to "the supply-constrained environment that we continue to make progress on resolving."

79.     During the same call, Defendant Loree stated that Stanley was positioned to adapt to the end of the COVID-19 pandemic, stating:

> While the boom global conditions of 2020 and 2021 have leveled off, the fundamentals and secular drivers remain healthy and are still very much intact. As we look out over the balance of the year, the combination of repair/remodel, new residential construction and commercial construction have plenty of runway to continue to drive enduring demand in many of our markets around the world.

80.     While Defendant Loree recognized that the COVID-19 pandemic temporarily heightened the demand for Stanley's products, he assured investors that "we see continued momentum within our core markets" and that "we will monitor and respond accordingly if and when we observe any adverse impact from a higher interest rate environment and/or significant elasticity of demand effects following our pricing actions."

81.     As a result of the Individual Defendants' false and misleading statements issued on April 28, 2022 in the press release and during the earnings call, the price of Stanley's stock remained artificially inflated.

82.     On July 28, 2022, before the market opened, Stanley issued a press release reporting the Company's second quarter 2022 financial results. The press release stated that "the macroeconomic environment—including inflation, rising interest rates ***and significantly slower demand*** in late May and June—drove the majority of the challenges we faced this quarter", "the softening of the demand environment accelerated rapidly during the last portion of the quarter", and that "[n]et sales for the quarter were ... partially offset by lower volume (-13%)."

83.     That same day, during an earnings call, Defendant Allan, who had become Stanley's CEO on July 1, 2022, admitted that the Company had experienced a significant decline in demand:

> [W]e continue to navigate a dynamic macro environment, including inflation, rising interest rates; and now late in the quarter, we started to see these factors impact

retail customer demand across our global tools and outdoor markets. The significantly slower demand trends in June, combined with a very late start to the outdoor season due to weather, resulted in significant volume pressure versus expectations, and revenue landed well below our plan. In response to the sudden shift in demand, we have taken immediate corrective cost actions, which are already in progress. We are now expecting demand to normalize closer to 2019 levels for the remainder of 2022.

84.    The Individual Defendants could not continue to conceal the Company's severe issues, as Defendant Allan candidly stated that the Company "saw a swift deterioration in consumer tools and outdoor demand" and that "the changes from this new demand environment . . . caused us to revise our 2022 adjusted diluted EPS range down to $5 up to $6," constituting a more than 50% decline from the Company's 2022 EPS projections.

85.    On this news, the price of Stanley's stock fell from $117.45 per share on July 27, 2022 to a close of $98.58 per share on July 28, 2022, a one-day decline of more than 16%.

## DERIVATIVE AND DEMAND FUTILITY ALLEGATIONS

86.    Plaintiff brings this action derivatively in the right and for the benefit of the Company to redress injuries suffered and to be suffered as a direct and proximate result of the breaches of fiduciary duties by the Individual Defendants.

87.    Stanley is named solely as a nominal party in this action. This is not a collusive action to confer jurisdiction on this Court that it would otherwise not have.

88.    Plaintiff is a current shareholder of Stanley and was a continuous shareholder of the Company during the period of the Individual Defendants' wrongdoing alleged herein. Plaintiff will adequately and fairly represent the interests of the Company in enforcing and prosecuting its rights and retained counsel competent and experienced in derivative litigation.

89.    At the time this action was commenced, the ten-member Board was comprised of Defendants Ayers, Allan, Campbell, Crew, Hankin, Manning, Mitchell, Palmieri, Poul, and Tan.

Accordingly, Plaintiff is only required to show that five Directors cannot exercise independent objective judgment about whether to bring this action or whether to vigorously prosecute this action. As set forth below, all of the Board's current directors are incapable of making an independent and disinterested decision to institute and vigorously prosecute this action, including because they face a substantial likelihood of liability, and so demand on the Board to institute this action is not necessary because such a demand would have been a futile act.

90.     The Individual Defendants, together and individually, violated and breached their fiduciary duties of candor, good faith, and loyalty. Specifically, the Individual Defendants knowingly approved and/or permitted the wrongs alleged herein and participated in efforts to conceal those wrongs. The Individual Defendants authorized and/or permitted the false statements to be disseminated directly to the public and made available and distributed to shareholders, authorized and/or permitted the issuance of various false and misleading statements, and are principal beneficiaries of the wrongdoing alleged herein. Accordingly, the Individual Defendants could not fairly and fully prosecute such a suit even if they instituted it.

91.     The Individual Defendants either knowingly or recklessly issued or caused the Company to issue the materially false and misleading statements alleged herein. The Individual Defendants knew of the falsity of the misleading statements at the time they were made. As a result of the foregoing, the Individual Defendants breached their fiduciary duties, face a substantial likelihood of liability, are not disinterested, and demand upon them is futile, and thus excused.

92.     As members of the Board charged with overseeing the Company's affairs, each of the Individual Defendants had knowledge, or the fiduciary obligation to inform themselves, of information pertaining to the Company's core operations and the material events giving rise to these claims. Specifically, as Board members of Stanley, the Individual Defendants knew, or

should have known, the material facts surrounding the stagnating demand for the Company's products resulting from the end of the COVID-19 pandemic and the rising interest rate and inflation environment.

93.     Defendants Campbell, Hankin, Tan, Mitchell, and Poul are not disinterested or independent, and therefore, are incapable of considering a demand because they serve as members of the Audit Committee and, pursuant to the Audit Committee Charter, were specifically charged with the responsibility to assist the Board in fulfilling its oversight responsibilities related to, *inter alia*, public disclosure requirements. Throughout the Relevant Period, however, these Defendants breached their fiduciary duties to the Company by failing to prevent, correct, or inform the Board of the issuance of material misstatements and omissions regarding the Company's financial condition and business prospects. Therefore, Defendants Campbell, Hankin, Tan, Mitchell, and Poul cannot independently consider any demand to sue themselves for breaching their fiduciary duties to the Company, as that would expose them to substantial liability and threaten their livelihood.

94.     Furthermore, demand in this case is excused because each of the Individual Defendants received payments, benefits, stock options, and other emoluments by virtue of their membership on the Board and their control of the Company.

95.     The Individual Defendants derive substantial revenue from the Company, control the Company, and are indebted to each other. These conflicts of interest have precluded the directors from adequately monitoring the Company's operations and internal controls and calling into question the other Individual Defendants' conduct. Thus, any demand on the current Board would be futile.

96.     The Individual Defendants may also be protected against personal liability for their

acts of mismanagement and breaches of fiduciary duty alleged herein by directors' and officers' liability insurance if they caused the Company to purchase it for their protection with corporate funds *i.e.*, monies belonging to the stockholders of Stanley. If there is a directors' and officers' liability insurance policy covering the Individual Defendants, it may contain provisions that eliminate coverage for any action brought directly by the Company against the Individual Defendants, known as, *inter alia*, the "insured-versus-insured exclusion." As a result, if the Individual Defendants were to sue themselves or certain officers of Stanley, there would be no directors' and officers' insurance protection. Accordingly, the Individual Defendants cannot be expected to bring such a suit. On the other hand, if the suit is brought derivatively, as this action is brought, such insurance coverage, if such an insurance policy exists, will provide a basis for the Company to effectuate a recovery. Thus, demand on the Individual Defendants is futile and, therefore, excused.

97.     If there is no directors' and officers' liability insurance, then the Individual Defendants will not cause Stanley to sue the Defendants named herein, since, if they did, they would face a large uninsured individual liability. Accordingly, demand is futile in that event as well.

98.     Accordingly, for all of the reasons set forth above, all of the directors are unable to consider a demand with disinterestedness and independence. Consequently, a pre-suit demand on the Board is futile and excused.

***Harm to the Company***

99.     As a direct and proximate result of the Individual Defendants' misconduct, Stanley has lost and expended, and will lose and expend, millions of dollars.

100.     On March 2, 2022, Stanley announced it had entered into accelerated share repurchase agreements with Bank of America, N.A. and Citibank, N.A. to repurchase an aggregate $2 billion of

the Company's common stock.  The Company announced that this program was in addition to the $300,000,000 of open market repurchases that the Company had already completed. Stanley has incurred substantial injury from the significant Company stock repurchases it made on the open market and pursuant to the accelerated share repurchase agreements during the Relevant Period at prices artificially inflated by the Individual Defendants' misconduct as alleged above.

101.    In addition, Stanley has incurred, and is incurring, significant costs and expenses in connection with defending itself in the Securities Class Action. Moreover, Stanley had been exposed to massive class-wide liability for violation of the federal securities laws in the Securities Class Action.

102.    The Company has also been harmed by the significant compensation and benefits paid to the Individual Defendants who breached their fiduciary duties to the Company, including bonuses tied to the Company's attainment of certain objectives, and benefits paid to the Individual Defendants who breached their fiduciary duties to the Company.

## <u>COUNT I</u>

**Against the Individual Defendants for Violations of § 10(b)**
**of the Exchange Act, 15 U.S.C. § 78(j), and Rule 10b-5, 17 C.F.R. § 240.10b-5**

103.    Plaintiff incorporates by reference and realleges each and every allegation contained above, as though fully set forth herein.

104.    The Individual Defendants violated Section 10(b) of the Exchange Act, 15 U.S.C. § 78j(b), and Rule 10b-5 promulgated thereunder by the SEC.

105.    The Individual Defendants, individually and in concert, directly or indirectly, disseminated or approved the materially false statements specified above, which they knew or deliberately disregarded were misleading in that they contained misrepresentations and failed to

disclose material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading.

106.     The Individual Defendants violated Section 10(b) of the Exchange Act and Rule 10b-5 in that they: (i) employed devices, schemes, and artifices to defraud; (ii) made untrue statements of material facts or omitted to state material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading; or (iii) engaged in acts, practices, and a course of business that operated as a fraud or deceit upon Plaintiff.

107.     The Individual Defendants acted with scienter because they: (i) knew that the public documents and statements issued or disseminated in the name of Stanley were materially false and misleading; (ii) knew that such statements or documents would be issued or disseminated to the investing public; and (iii) knowingly and substantially participated or acquiesced in the issuance or dissemination of such statements or documents as primary violations of the securities laws.

108.     The Individual Defendants, by virtue of their receipt of information reflecting the true facts of Stanley, their control over, and/or receipt and/or modification of Stanley's allegedly materially misleading statements, and/or their associations with the Company which made them privy to confidential proprietary information concerning Stanley, participated in the fraudulent scheme alleged herein.

109.     As a result of the foregoing, the market price of Stanley common stock was artificially inflated during the relevant time period. In ignorance of the falsity of the statements, Plaintiff relied on the statements described above and/or the integrity of the market price of Stanley common stock in purchasing Stanley common stock at prices that were artificially inflated as a result of these false and misleading statements and were damaged thereby.

110.    In addition, as a result of the wrongful conduct alleged herein, the Company has suffered significant damages, including the costs and expenses incurred in defending itself in the Securities Action and reputational harm. The Individual Defendants, through their violation of Section 10(b) of the Exchange Act, 15 U.S.C. § 78j(b), and Rule 10b-5, have exposed the Company to millions of dollars in potential class-wide damages in the Securities Action.

**COUNT II**

**Against the Individual Defendants for Breach of Fiduciary Duty**

111.    Plaintiff repeats and realleges the preceding allegations as if fully set forth herein.

112.    The Individual Defendants owed the Company fiduciary obligations. By reason of their fiduciary relationships, the Individual Defendants owed the Company the highest obligation of good faith, fair dealing, loyalty, and due care.

113.    The Individual Defendants violated and breached their fiduciary duties of care, loyalty, reasonable inquiry, and good faith.

114.    The Individual Defendants engaged in a sustained and systematic failure to properly exercise their fiduciary duties. Among other things, the Individual Defendants breached their fiduciary duties of loyalty and good faith by permitting the use of inadequate practices and procedures to guide the truthful dissemination of Company news to the investing public and to the Company's shareholders, issuing, allowing or permitting false and misleading statements to be disseminated in the Company's SEC filings and other disclosures, and otherwise failing to ensure that adequate internal controls were in place regarding the serious business reporting issues and deficiencies described above. These actions could not have been a good faith exercise of prudent business judgment to protect and promote the Company's corporate interests.

115.    As a direct and proximate result of the Individual Defendants' failure to fulfill their fiduciary obligations, the Company has sustained significant damages.

116.    As a result of the misconduct alleged herein, the Individual Defendants are liable to the Company. As a direct and proximate result of the Individual Defendants' breach of their fiduciary duties, the Company has suffered damage, not only monetarily, but also to its corporate image and goodwill. Such damage includes, among other things, costs incurred in defending itself in the Securities Action, exposing the Company to millions of dollars in potential class-wide damages in the Securities Action, and damage to the share price of the Company's stock, resulting in an increased cost of capital, and reputational harm.

117.    Plaintiff, on behalf of Stanley, has no adequate remedy at law.

## COUNT III

### Against the Individual Defendants for Aiding and
### Abetting Breach of Fiduciary Duty

118.    Plaintiff repeats and realleges the preceding allegations as if fully set forth herein.

119.    By encouraging and accomplishing the illegal and improper transactions alleged herein and concealing them from the public, the Individual Defendants have each encouraged, facilitated, and advanced their breaches of their fiduciary duties. In so doing, the Individual Defendants have each aided and abetted, conspired, and schemed with one another to breach their fiduciary duties, waste the Company's corporate assets, and engage in the *ultra vires* and illegal conduct complained of herein.

120.    Plaintiff, on behalf of Stanley, has no adequate remedy at law.

## COUNT IV

### Against the Individual Defendants for Waste of Corporate Assets

121.    Plaintiff repeats and realleges the preceding allegations as if fully set forth herein.

122.    The wrongful conduct alleged regarding the issuance of false and misleading statements was continuous, connected, and on-going throughout the time period in issue. It resulted in continuous, connected, and ongoing harm to the Company.

123.    As a result of the misconduct described above, the Individual Defendants wasted corporate assets by, *inter alia*: (i) permitting and/or authorizing the Company's repurchase of Stanley stock on the open market and pursuant to accelerated share repurchase agreements during the Relevant Period at prices artificially inflated by the Individual Defendants' misconduct as alleged above; (ii) paying and collecting excessive compensation and bonuses; and (ii) incurring potentially millions of dollars of legal liability and/or legal costs, including defending against the Securities Action.

124.    As a result of the waste of corporate assets, the Individual Defendants are liable to the Company.

125.    Plaintiff, on behalf Stanley, has no adequate remedy at law.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff demands judgment as follows:

A.    Awarding money damages against all Individual Defendants, jointly and severally, for all losses and damages suffered as a result of the acts and transactions complained of herein, together with pre-judgment interest, molded in a fashion to ensure the Individual Defendants do not participate therein or benefit thereby;

B.    Directing all Individual Defendants to account for all damages caused by them and all profits and special benefits and unjust enrichment they have obtained as a result of their unlawful conduct, including all salaries, bonuses, fees, stock awards, options and common stock sale proceeds, and imposing a constructive trust thereon;

C.    Awarding punitive damages;

D.      Awarding costs and disbursements of this action, including reasonable attorneys'
fees, accountants' and experts' fees, costs, and expenses; and

E.      Granting such other and further relief as the Court deems just and proper.

### JURY DEMAND

Plaintiff hereby demands a trial by jury.

Dated: September 20, 2023

**LACHTMAN COHEN P.C.**
Brian S. Cohen
500 West Putnam Avenue, Suite 400
Greenwich, CT 06830
Telephone: (203) 404-4960
Email: bcohen@lcpclaw.com

**RIGRODSKY LAW, P.A.**
Seth D. Rigrodsky
Timothy J. MacFall
Gina M. Serra
Samir Aougab
825 East Gate Boulevard, Suite 300
Garden City, NY 11530
Telephone: (516) 683-3516
Facsimile: (302) 654-7530
Email: sdr@rl-legal.com
         tjm@rl-legal.com
         gms@rl-legal.com
         sa@rl-legal.com

*Attorneys for Plaintiff Scott A. Applebaum*

## <u>VERIFICATION OF SCOTT A. APPLEBAUM</u>

I, Scott A. Applebaum, am the plaintiff in this action. I have reviewed the allegations made in the Verified Shareholder Derivative Complaint, know the contents thereof, and authorize its filing.  As to those allegations of which I have personal knowledge, I believe them to be true. As to those allegations of which I do not have personal knowledge, I rely upon my counsel and their investigation and believe them to be true.

I declare under penalty of perjury that the forgoing is true and correct.

Dated: _8/30/2023_

DocuSigned by:

9E6B24256BCD454...

SCOTT A. APPLEBAUM